411 P.2d 470

**Harold E. GODFREY and Edith O. Godfrey, husband and wife, Appellants and Cross-Appellees,**

**v.**

**Edward T. NAVRATIL and Marian A. Navratil, husband and wife, Appellees and Cross-Appellants.***

**I CA–CIV 65.**

Court of Appeals of Arizona.

March 2, 1966.

Rehearing Denied April 5, 1966.

Review Denied May 10, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7989. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Carl Tenney, Phoenix, for appellants and cross-appellees.

Henry Jacobowitz, Phoenix, for appellees and cross-appellants.

FRANK X. GORDON, Jr., Superior Court Judge.

Plaintiffs Navratil obtained judgment below, rescinding a contract for sale of real property and for $4,000.00 in damages against defendants Godfrey. Godfreys appeal from the judgment and their main assignment of error is that the court's findings and conclusions, based on the evidence, as a matter of law do not entitle plaintiffs to judgment. We must agree with appellants.

The evidence necessary for this decision, and taken in the light most favorable to sustain the lower court's judgment, is as follows: In March of 1959, Godfreys sold some property on the southeast corner of the intersection of Southern Avenue and 36th Street in Phoenix, Arizona, to Navratils. The improvements on the property consisted of a combination store building and living quarters on the front, with service station facilities and a garage, with an apartment above, on the rear. The method of sale was an escrow transaction with Arizona Title Guarantee and Trust Company as escrow agent.

The total price to be paid by Navratils was $18,500.00, as follows: $3,000.00, including cash and an assigned promissory note, as earnest money in escrow, and $2,500.00 additional in cash before close of escrow. Navratils thereafter were to assume a $2,020.74 balance on the property from Godfreys to a third party. The remaining $10,979.26 was to be paid by the Navratils to Godfreys at the rate of $100.00 or more per month, including interest at 6% per annum on the remaining unpaid principal. Arizona Title Guarantee and Trust Company, as escrow agent, was to hold the Godfreys' Warranty Deed to Navratils until the full purchase price was paid by Navratils.

Prior to entering into the Purchase and Sale Agreement, and prior to establishing the escrow, Mr. Navratil visited the property twice, once with Mr. Godfrey. On the last occasion, Godfrey told Navratil that in 1955 he had been advised by an engineer of the Maricopa County Highway Department, when Southern Avenue was being straightened and resurfaced, that according to a survey they had, some of Godfrey's improvements (his underground gasoline storage tanks, two gasoline pumps and a tree) were on the highway right-of-way. Godfrey related to Navratil that he had "satisfied" the Highway Department by cutting down the tree and moving the gasoline pumps back on a line with his buildings. The underground gasoline storage tanks were allowed to remain under the right-of-way. Navratil's testimony is that on that visit Godfrey told him the highway right-of-way line was in front of the building and that the building was not on highway property.

As a part of the transaction, title insurance was to be issued in the names of the Navratils when the deed was to be recorded and delivered to them. Prior to the closing of the escrow, the real estate broker involved presented to Navratils a

letter which was prepared by the title company, which stated as follows:

Escrow #180862
Phoenix, Arizona
April 29, 1959

"Arizona Title Guarantee & Trust
  Company
124 North First Avenue
Phoenix, Arizona
Attention: Harry R. Zeigler
            Escrow Officer

Gentlemen:

This is your authority and direction to close your escrow and issue your policy of Title Insurance subject to requirements number 1 through 8, and in particular, exception number 6, which reads:

'no liability is assumed by reason of any building lying within the 66 foot road on the north as disclosed by survey, by Harold W. Yost, dated November 13, 1945, Job No. 712'."

The Preliminary Title Report issued did include such an exception.

Mr. Navratil admitted having read the letter and that he signed the same without further inquiry. Mrs. Navratil and the Godfreys also signed the letter and shortly thereafter the escrow closed.

Navratils went into possession in May 1959, and kept the premises until February, 1961, when they declared their intention to rescind their agreement with the Godfreys and tendered possession of the premises back for the reason that Godfreys could not deliver clear and marketable title to the property to them, as they claimed the building on the property encroached on the county's right-of-way by approximately five feet.

Navratils claim that the fact of the encroachment did not actually come to their attention until shortly before February 1961, when they had contracted to sell the property to a Mildred K. Haas, who refused to accept the property subject to the same exception made by the title company and who elected to rescind her purchase from the Navratils for that reason.

Prior to the time Navratils relinquished possession to Godfreys, Navratils had become delinquent in their $100.00 payments to the Godfreys for the months of December 1960 and January 1961. Godfreys, after accepting possession, proceeded to have the Navratils' interests in the property forfeited by the escrow agent, pursuant to their escrow agreement. Thereafter Navratils brought suit to rescind their agreement with the Godfreys and to have the monies they had paid thereon returned to them by way of damages. The complaint filed in the action alleges as grounds for judicial rescission that Godfreys had fraudulently misrepresented to them that they had and would give to Navratils a good and marketable title to the property and improvements when, in fact, they didn't have such a title.

After hearing the evidence, the court below ordered rescission of the agreement and awarded plaintiffs (Navratils) $4,000.00 in damages. The court made the following findings and conclusions:

"* * * a portion of the improvements purchased by the plaintiffs from the defendants projected into the right-of-way. The plaintiffs were informed only as to the fact that the gasoline storage tanks were within the right-of-way. The plaintiffs had the right to rely upon their contract and did rely on their contract, being the agreement which is Plaintiffs' 1 in evidence. There was no duty on the part of the plaintiffs to make inquiry other than that engaged in by the plaintiffs. * * *."

The legal description of the property sold in the Agreement, which is Plaintiffs' 1 in evidence, does not contain any reference to any improvements or buildings on the property whatsoever.

We believe the judge's findings and conclusions are not supported by law concerning fraudulent misrepresentations.

■ The Supreme Court of our state, in the case of Moore v. Meyers, 31 Ariz. 347, 253 P. 626 (1927), reversed on another point, 31 Ariz. 519, 255 P. 164, established the nine elements necessary to be pleaded and proved to support an allegation of fraudulent misrepresentation. They are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

■ On many occasions our Supreme Court has restated its position that these elements are all necessary to sustain an actionable fraud, and that if any one or more of the elements are not present or proved in the case, the case must fail. Koen v. Cavanagh, 70 Ariz. 389, 222 P.2d 630 (1950), Wilson v. Byrd, 79 Ariz. 302, 283 P.2d 1079 (1955), Cullison v. Pride O'Texas Citrus Association, 88 Ariz. 257, 355 P.2d 898 (1960), Puntel v. Kirtides, 89 Ariz. 361, 362 P.2d 737 (1961). Also, the proof of fraud must be clear and convincing. See Cullison v. Pride O'Texas Citrus Assn., supra.

In our opinion, element (8), the hearer's right to rely on the representation, is not present and therefore the defendant should have prevailed.

■ The parties were dealing with each other at arms length as normal buyers and sellers. No confidential relationship existed between them. Navratil, a mechanical engineer by trade, was told by Godfrey before the transaction was entered into that there had been a problem with the highway department and that he had found it necessary to move some of his improvements to satisfy them. Navratil knew that the underground storage tanks were still in the right-of-way and that it was possible they might need to be moved at some future time. But in addition to these things, and prior to the close of escrow when he was presented with

and read the letter directed to the escrow agent, which would absolve it of responsibility for there being any "building" on the road, and referring to a specific survey by date, author and number, we believe he was furnished with sufficient facts which should have put him on inquiry to determine the location of the improvements with relation to the right-of-way line. He did not inquire of Godfrey or any other person at this point as to where the right-of-way line was, what "buildings" were involved, or just what the term might mean, or where he might locate this so-called Yost survey, or whether it was valid, or whether to proceed to have the property surveyed himself. Once a buyer is put on notice of a condition, the existence of which might affect the desirability of the property he is about to purchase, it is then his duty to make such investigation as is reasonable under the circumstances in order to determine whether or not he wishes to buy. If he fails to do this, he is bound by the law of caveat emptor. See Simmons Creek Coal Co. v. Doran, 142 U.S. 417 at 437, 12 S.Ct. 239 at 246, 35 L.Ed. 1063 (1892), where the court held:

"Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. Caveat emptor is one of the best-settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due inquiries, or he may not be a bona fide purchaser. He is bound not only by actual, but also by constructive notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice."

■ Our Supreme Court has followed this principle also. In Luke v. Smith, 13

Ariz. 155, 162, 108 P. 494, 496 (1910), it said:

> "Where one has notice of a fact affecting property which he seeks to purchase, which puts him upon inquiry, he is chargeable with the knowledge which the inquiry, if made, would have revealed; and one is put upon inquiry by notice of a claim which is inconsistent with the title he seeks to obtain, and must exercise due diligence to ascertain the facts upon which the claim is based."

Also, in Davis v. Kleindienst, 64 Ariz. 251, 258, 169 P.2d 78, 83 (1946):

> "The law seems to be settled that a person who fails to exercise due diligence to avail himself of information which is within his reach is not a bona fide purchaser. University of Richmond v. Stone, 148 Va. 686, 139 S.E. 257. Thus a purchaser who has brought to his attention circumstances which should have put him on inquiry which if pursued with due diligence would have led to knowledge of an adverse interest in the property, is not a bona fide purchaser. Shephard v. Van Doren, 40 N.M. 380, 60 P.2d 635."

■■ Assuming a false representation, there is still a point at which a buyer may be forced to abandon the protection of the false or misleading representation and open his eyes to that which is signalling danger, or thereafter proceed at his own peril and be forced to accept less than originally promised. We believe this point was reached in this case when Navratil was handed the letter authorizing the escrow agent to close, previously mentioned. Its contents contradict that which he said he was told by Godfrey, and specifically told him about the existence of a survey which would disprove Godfrey's representation. With such information before him under the circumstances as they existed at that time, Navratil no longer had a right to rely on the representation, false as it may have been.

As the case will be remanded with instruction to enter judgment in favor of defendants, there is no need to deal with the remaining assignments of error claimed by defendants.

It is ordered reversing the lower court's judgment, and remanding the matter, with instructions to vacate its judgment and enter judgment in favor of defendants.

CAMERON, Acting C. J., and DONOFRIO, J., concur.

NOTE: Chief Judge Henry S. Stevens having requested that he be relieved from consideration of this matter, Judge Frank X. Gordon, Jr., was called to sit in his stead and participate in the determination of this decision.