619 P.2d 485

UNIVERSAL INVESTMENT COMPANY,
a corporation, as trustee,
Plaintiff/Appellant,

v.

SAHARA MOTOR INN, INC., a corporation, Defendant/Appellee.

No. 2 CA–CIV 3516.

Court of Appeals of Arizona,
Division 2.

Sept. 17, 1980.

Rehearing Denied Oct. 22, 1980.

Review Denied Nov. 13, 1980.

**214**

Little, Fisher, Brady, Bromley & Siegel, P. C. by George W. Bromley, Tucson, for plaintiff/appellant.

Stompoly & Even, P. C. by John Patrick Lyons, Tucson, for defendant/appellee.

## OPINION

RICHMOND, Judge.

This is a suit on a promissory note received by appellant Universal Investment Co. as part payment in the sale of a Tucson motel. Sahara Motor Inn, Inc., the buyer, in its answer raised the affirmative defense of fraud and filed a counterclaim for rescission and damages based on fraudulent concealment. The trial court entered judgment that neither party take anything. Only the seller has appealed.

The determinative question is whether the seller had a duty to disclose the fact that a defect in the electrical system violated city code provisions, even though the buyer knew or should have known of the defect and the sales contract contained an "as is" clause. We reverse.

On March 25, 1978, the buyer agreed to purchase the Thunderbird Motel in Tucson for $250,000. The contract states that the property "will be accepted in an 'as is' condition, except the pool will be cleaned and painted." In part payment the buyer executed a promissory note for $57,289.03 with interest at eight per cent per annum from March 29, 1978, which was secured by deed of trust. Buyer assumed seller's obligations under a pre-existing contract of sale, which also was secured by deed of trust.

Buyer inspected and approved the premises. After closing, the buyer was notified by the City of Tucson that the motel's electrical system was in violation of the city code. Electrical service was discontinued and the motel closed on July 10, 1978, because the buyer failed to repair the system.

Buyer made none of the agreed payments on the promissory note or the assumed contract. Under the acceleration clause the seller sued for the entire amount.

In its judgment the trial court found and concluded:

1. The Plaintiff [seller] knew or should have known of the electrical code violations;
2. That these electrical code violations were material;
3. That the Plaintiff failed to convey the information respecting the electrical violations to Defendant;
4. That Defendant was justified in not making the payments on the note;
5. That Defendant knew, or should have known, of the defects on the said premises;
6. That Defendant was anxious for a quick deal.

■ Other than failure to mitigate damages, the only defense asserted against the seller's claim was fraudulent concealment. The court's findings do not support that defense, nor is there evidence in the record to support it.

■ Fraud will not be presumed and must be proved by clear and convincing evidence. *Gardner v. Royal Development Co.*, 11 Ariz.App. 447, 465 P.2d 386 (1970). Concealing a material fact when there is a duty to disclose may be actionable fraud. *National Housing Industries, Inc. v. E. L. Jones Development Co.*, 118 Ariz. 374, 576 P.2d 1374 (App.1978). The evidence supports findings that the seller failed to disclose violations of the city code in the electrical system which were known to it prior to closing and that violations were material under the circumstances, but the questions remain whether the seller had a legal duty to disclose the violations to the buyer or the

buyer had a right to rely on the seller's silence.

Though generally no duty to disclose exists between a buyer and seller, certain circumstances may give rise to such a duty. If there is a confidential relationship between the parties and one reasonably relies on the trustworthiness of the other, the duty arises. *Stewart v. Phoenix National Bank*, 49 Ariz. 34, 64 P.2d 101 (1937). This was an arm's length transaction. Consequently, no special relationship existed that would give rise to a duty to disclose. *Klinger v. Hummel*, 11 Ariz.App. 356, 464 P.2d 676 (1970).

Inquiry by the buyer about the condition of the electrical system would have imposed a duty on the seller to disclose all it knew. Here, however, the buyer made no inquiry and made its own inspection of the system. The evidence supports the court's finding that the buyer knew or should have known of the defects. The "as is" clause in the contract itself implies that the property was in some way defective and the buyer could not justifiably rely on the seller's silence as a representation that the electrical system met code specifications.

Buyer cites California cases as authority requiring disclosure of code violations to a buyer in a land sale. *See Lingsch v. Savage*, 213 Cal.App.2d 729, 29 Cal.Rptr. 201 (1963); *Sanfran Co. v. Rees Blow Pipe Mfg. Co.*, 168 Cal.App.2d 191, 335 P.2d 995 (1959); *Cohen v. Citizens National Trust & Savings Bank*, 143 Cal.App.2d 480, 300 P.2d 14 (1956); *Curran v. Heslop*, 115 Cal.App.2d 476, 252 P.2d 378 (1953). In each of those cases, however, the courts found a duty to disclose only when the defect or code violation was latent and not discoverable through diligent investigation by the buyer. In this case the defects were patent and the court found the buyer knew or should have known of them. There was no evidence to establish the buyer could not have discovered the extent of the defects with reasonable investigation, and there was evidence that it could have discovered the code violations through such investigation once it learned of the defects. Under those circumstances it had no right to rely on the seller's silence. *See Godfrey v. Navratil*, 3 Ariz.App. 47, 411 P.2d 470 (1966).

Buyer argues that the seller is required to mitigate damages and failure to do so should preclude recovery on the note. In general, the doctrine of avoidable consequences affects the measure of damages, not the right to recover. The doctrine is not applicable when there is an absolute promise to pay.

Buyer also argues that the deed of trust obligates seller to sell the security before suing on the note. Though the trustee under a deed of trust may satisfy a default by trustee's sale or foreclosure, A.R.S. § 33–807, the statutory remedy is neither mandatory nor exclusive. The Buyer, citing *Bank of Italy Nat. Trust & Savings Assn. v. Bentley*, 217 Cal. 644, 20 P.2d 940 (1933), interprets A.R.S. § 33–813 to imply a contract that the beneficiary will first look to the security before seeking to recover any deficiency on the note. We do not agree. Foreclosure of a deed of trust in the same manner as a real property mortgage is expressly authorized by § 33–807. In an action for foreclosure the provisions of § 33–721, et seq., are applicable. *See* § 33–814(C). Those provisions include an election to bring an action on the debt. *See* § 33–722. Had the parties intended to prohibit an action on the debt, they could have done so by express language in the deed of trust precluding recovery of any balance due after sale or foreclosure. *See* § 33–814(D).

Buyer also argues that the court's findings in the judgment must be ignored because neither party made a proper request under 16 A.R.S. Rules of Civil Procedure, rule 52(a). We disagree. Sua sponte findings need not be ignored, *see Neal v. Neal*, 116 Ariz. 590, 570 P.2d 758 (1977), and where based on conflicting evidence will not be disturbed on appeal if there is reasonable evidence to support them. *Kolberg v. McKean's Model Laundry & Dry Cleaning Co.*, 9 Ariz.App. 549, 454 P.2d 867 (1969).

The judgment is reversed and the case remanded with instructions to enter judgment for Universal Investment Co. in the amount of $57,289.03 plus interest at eight per cent per annum from March 29, 1978, and reasonable attorney's fees in accordance with the terms of the note.

HATHAWAY, C. J., and HOWARD, J., concur.