725 P.2d 1115

Warren G. HILL and Gloria R. Hill, husband and wife, Plaintiffs-Appellants and Cross-Appellees,

v.

Ora G. JONES and Barbara R. Jones, husband and wife, Defendants-Appellees and Cross-Appellants.

1 CA–CIV 7889.

Court of Appeals of Arizona, Division 1, Department B.

Mar. 11, 1986.

Reconsideration Denied April 23, 1986.

Review Denied Oct. 1, 1986.

Knollmiller, Herrick, Brown & Arenofsky by Thomas N. Swift, Tempe, for Warren and Gloria Hill.

Johnson & Shelley by Bryn R. Johnson, Mesa, for Ora and Barbara Jones.

OPINION

MEYERSON, Judge.

Must the seller of a residence disclose to the buyer facts pertaining to past termite infestation? This is the primary question presented in this appeal. Plaintiffs Warren G. Hill and Gloria R. Hill (buyers) filed suit to rescind an agreement to purchase a residence. Buyers alleged that Ora G. Jones and Barbara R. Jones (sellers) had made misrepresentations concerning termite damage in the residence and had failed to disclose to them the existence of the damage and history of termite infestation in the residence. The trial court dismissed the claim for misrepresentation based upon a so-called integration clause in the parties' agreement.

Sellers then sought summary judgment on the "concealment" claim arguing that

they had no duty to disclose information pertaining to termite infestation and that even if they did, the record failed to show all of the elements necessary for fraudulent concealment. The trial court granted summary judgment, finding that there was "no genuinely disputed issue of material fact and that the law favors the ... defendants." The trial court awarded sellers $1,000.00 in attorney's fees. Buyers have appealed from the judgment and sellers have cross-appealed from the trial court's ruling on attorney's fees.

## I. FACTS

In 1982, buyers entered into an agreement to purchase sellers' residence for $72,000. The agreement was entered after buyers made several visits to the home. The purchase agreement provided that sellers were to pay for and place in escrow a termite inspection report stating that the property was free from evidence of termite infestation. Escrow was scheduled to close two months later.

One of the central features of the house is a parquet teak floor covering the sunken living room, the dining room, the entryway and portions of the halls. On a subsequent visit to the house, and when sellers were present, buyers noticed a small "ripple" in the wood floor on the step leading up to the dining room from the sunken living room. Mr. Hill asked if the ripple could be termite damage. Mrs. Jones answered that it was water damage. A few years previously, a broken water heater in the house had in fact caused water damage in the area of the dining room and steps which necessitated that some repairs be made to the floor. No further discussion on the subject, however, took place between the parties at that time or afterwards.

Mr. Hill, through his job as maintenance supervisor at a school district, had seen similar "ripples" in wood which had turned out to be termite damage. Mr. Hill was not totally satisfied with Mrs. Jones's explanation, but he felt that the termite inspection report would reveal whether the ripple was due to termites or some other cause.

The termite inspection report stated that there was no visible evidence of infestation. The report failed to note the existence of physical damage or evidence of previous treatment. The realtor notified the parties that the property had passed the termite inspection. Apparently, neither party actually saw the report prior to close of escrow.

After moving into the house, buyers found a pamphlet left in one of the drawers entitled "Termites, the Silent Saboteurs." They learned from a neighbor that the house had some termite infestation in the past. Shortly after the close of escrow, Mrs. Hill noticed that the wood on the steps leading down to the sunken living room was crumbling. She called an exterminator who confirmed the existence of termite damage to the floor and steps and to wood columns in the house. The estimated cost of repairing the wood floor alone was approximately $5,000.

Through discovery after their lawsuit was filed, buyers learned the following. When sellers purchased the residence in 1974, they received two termite guarantees that had been given to the previous owner by Truly Nolen, as well as a diagram showing termite treatment at the residence that had taken place in 1963. The guarantees provided for semi-annual inspections and annual termite booster treatments. The accompanying diagram stated that the existing damage had not been repaired. The second guarantee, dated 1965, reinstated the earlier contract for inspection and treatment. Mr. Jones admitted that he read the guarantees when he received them. Sellers renewed the guarantees when they purchased the residence in 1974. They also paid the annual fee each year until they sold the home.

On two occasions during sellers' ownership of the house but while they were at their other residence in Minnesota, a neighbor noticed "streamers" evidencing live termites in the wood tile floor near the entryway. On both occasions, Truly Nolen gave a booster treatment for termites. On the

second incident, Truly Nolen drilled through one of the wood tiles to treat for termites. The neighbor showed Mr. Jones the area where the damage and treatment had occurred. Sellers had also seen termites on the back fence and had replaced and treated portions of the fence.

Sellers did not mention any of this information to buyers prior to close of escrow. They did not mention the past termite infestation and treatment to the realtor or to the termite inspector. There was evidence of holes on the patio that had been drilled years previously to treat for termites. The inspector returned to the residence to determine why he had not found evidence of prior treatment and termite damage. He indicated that he had not seen the holes in the patio because of boxes stacked there. It is unclear whether the boxes had been placed there by buyers or sellers. He had not found the damage inside the house because a large plant, which buyers had purchased from sellers, covered the area. After investigating the second time, the inspector found the damage and evidence of past treatment. He acknowledged that this information should have appeared in the report. He complained, however, that he should have been told of any history of termite infestation and treatment before he performed his inspection and that it was customary for the inspector to be given such information.

Other evidence presented to the trial court was that during their numerous visits to the residence before close of escrow, buyers had unrestricted access to view and inspect the entire house. Both Mr. and Mrs. Hill had seen termite damage and were therefore familiar with what it might look like. Mr. Hill had seen termite damage on the fence at this property. Mrs. Hill had noticed the holes on the patio but claimed not to realize at the time what they were for. Buyers asked no questions about termites except when they asked if the "ripple" on the stairs was termite damage. Mrs. Hill admitted she was not "try-ing" to find problems with the house because she really wanted it.

## II. CONTRACT INTEGRATION CLAUSE

■ We first turn to the trial court's ruling that the agreement of the parties did not give buyers the right to rely on the statement made by Mrs. Jones that the "ripple" in the floor was water damage. We find this ruling to be in error. The contract provision upon which the trial court based its ruling reads as follows:

That the Purchaser has investigated the said premises, and the Broker and the Seller are hereby released from all responsibility regarding the valuation thereof, and neither Purchaser, Seller, nor Broker shall be bound by any understanding, agreement, promise, representation or stipulation expressed or implied, not specified herein.

In *Lufty v. R.D. Roper & Sons Motor Co.*, 57 Ariz. 495, 506, 115 P.2d 161, 166 (1941), the Arizona Supreme Court considered a similar clause in an agreement and concluded that "any provision in a contract making it possible for a party thereto to free himself from the consequences of his own fraud in procuring its execution is invalid and necessarily constitutes no defense." The court went on to hold that "parol evidence is always admissible to show fraud, and this is true, even though it has the effect of varying the terms of a writing between the parties." 57 Ariz. at 506–507, 115 P.2d at 166; *Barnes v. Lopez*, 25 Ariz. App. 477, 480, 544 P.2d 694, 697 (1976). In this case, the claimed misrepresentation occurred after the parties executed the contract.[1] Assuming, for the purposes of this decision, that the integration clause would extend to statements made subsequent to the execution of the contract, the clause could not shield sellers from liability should buyers be able to prove fraud.

## III. DUTY TO DISCLOSE

■ The principal legal question presented in this appeal is whether a seller has a

---

1. Buyers' fraud theory is apparently based on the premise that they were not bound under the contract until a satisfactory termite inspection report was submitted.

duty to disclose to the buyer the existence of termite damage in a residential dwelling known to the seller, but not to the buyer, which materially affects the value of the property. For the reasons stated herein, we hold that such a duty exists.

This is not the place to trace the history of the doctrine of *caveat emptor.* Suffice it to say that its vitality has waned during the latter half of the 20th century. *E.g., Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 678 P.2d 427 (1984) (implied warranty of workmanship and habitability extends to subsequent buyers of homes); *see generally Quashnock v. Frost,* 299 Pa.Super. 9, 445 A.2d 121 (1982); *Ollerman v. O'Rourke Co.,* 94 Wis.2d 17, 288 N.W.2d 95 (1980). The modern view is that a vendor has an affirmative duty to disclose material facts where:

1. Disclosure is necessary to prevent a previous assertion from being a misrepresentation or from being fraudulent or material;

2. Disclosure would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if nondisclosure amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing;

3. Disclosure would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part;

4. The other person is entitled to know the fact because of a relationship of trust and confidence between them.

*Restatement (Second) of Contracts* § 161 (1981) *(Restatement);* see *Restatement (Second) of Torts* § 551 (1977).

Arizona courts have long recognized that under certain circumstances there may be a "duty to speak." *Van Buren v. Pima Community College Dist. Bd.,* 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976); *Batty v. Arizona State Dental Bd.,* 57 Ariz. 239, 254, 112 P.2d 870, 877 (1941). As the supreme court noted in the context of a confidential relationship, "[s]uppression of a ma-

terial fact which a party is bound in good faith to disclose is equivalent to a false representation." *Leigh v. Loyd,* 74 Ariz. 84, 87, 244 P.2d 356, 358 (1952); *National Housing Indus. Inc. v. E.L. Jones Dev. Co.,* 118 Ariz. 374, 379, 576 P.2d 1374, 1379 (1978).

Thus, the important question we must answer is whether under the facts of this case, buyers should have been permitted to present to the jury their claim that sellers were under a duty to disclose their (sellers') knowledge of termite infestation in the residence. This broader question involves two inquiries. First, must a seller of residential property advise the buyer of material facts within his knowledge pertaining to the value of the property? Second, may termite damage and the existence of past infestation constitute such material facts?

The doctrine imposing a duty to disclose is akin to the well-established contractual rules pertaining to relief from contracts based upon mistake. Although the law of contracts supports the finality of transactions, over the years courts have recognized that under certain limited circumstances it is unjust to strictly enforce the policy favoring finality. Thus, for example, even a unilateral mistake of one party to a transaction may justify rescission. *Restatement* § 153.

There is also a judicial policy promoting honesty and fair dealing in business relationships. This policy is expressed in the law of fraudulent and negligent misrepresentations. Where a misrepresentation is fraudulent or where a negligent misrepresentation is one of material fact, the policy of finality rightly gives way to the policy of promoting honest dealings between the parties. *See Restatement* § 164(1).

Under certain circumstances nondisclosure of a fact known to one party may be equivalent to the assertion that the fact does not exist. For example "[w]hen one conveys a false impression by the disclosure of some facts and the concealment of others, such concealment is in effect a false representation that what is disclosed is the

whole truth." *State v. Coddington,* 135 Ariz. 480, 481, 662 P.2d 155, 156 (App. 1983). Thus, nondisclosure may be equated with and given the same legal effect as fraud and misrepresentation. One category of cases where this has been done involves the area of nondisclosure of material facts affecting the value of property, known to the seller but not reasonably capable of being known to the buyer.

■ Courts have formulated this "duty to disclose" in slightly different ways. For example, the Florida Supreme Court recently declared that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." *Johnson v. Davis,* 480 So.2d 625, 629 (Fla.1985) (defective roof in three-year old home). In California, the rule has been stated this way:

> [W]here the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.

*Lingsch v. Savage,* 213 Cal.App.2d 729, 735, 29 Cal.Rptr. 201, 204 (1963); *contra Ray v. Montgomery,* 399 So.2d 230 (Ala. 1980); *see generally* W. Prosser & W. Keeton, *The Law of Torts* § 106 (5th ed.1984).[2] We find that the Florida formulation of the disclosure rule properly balances the legitimate interests of the parties in a transaction for the sale of a private residence and accordingly adopt it for such cases.

■ As can be seen, the rule requiring disclosure is invoked in the case of material

facts.[3] Thus, we are led to the second inquiry—whether the existence of termite damage in a residential dwelling is the type of material fact which gives rise to the duty to disclose. The existence of termite damage and past termite infestation has been considered by other courts to be sufficiently material to warrant disclosure. *See generally Annot.,* 22 A.L.R.3d 972 (1968).

In *Lynn v. Taylor,* 7 Kan.App.2d 369, 642 P.2d 131 (1982), the purchaser of a termite-damaged residence brought suit against the seller and realtor for fraud and against the termite inspector for negligence. An initial termite report found evidence of prior termite infestation and recommended treatment. A second report indicated that the house was termite free. The first report was not given to the buyer. The seller contended that because treatment would not have repaired the existing damage, the first report was not material. The buyer testified that he would not have purchased the house had he known of the first report. Under these circumstances, the court concluded that the facts contained in the first report were material. *See Hunt v. Walker,* 483 S.W.2d 732 (Tenn. App.1971) (severe damage to the residence by past termite infestation); *Mercer v. Woodard,* 166 Ga.App. 119, 123, 303 S.E.2d 475, 481–82 (1983) (duty of disclosure extends to fact of past termite damage).

■ Although sellers have attempted to draw a distinction between live termites[4] and past infestation, the concept of materiality is an elastic one which is not limited by the termites' health. "A matter is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction in ques-

---

**2.** There are variations on this same theme. For example, Pennsylvania has limited the obligation of disclosure to cases of dangerous defects. *Glanski v. Ervine,* 269 Pa.Super. 182, 191, 409 A.2d 425, 430 (1979).

**3.** Arizona has recognized that a duty to disclose may arise where the buyer makes an inquiry of the seller, regardless of whether or not the fact is material. *Universal Inv. Co. v. Sahara Motor Inn, Inc.,* 127 Ariz. 213, 215, 619 P.2d 485, 487

(1980). The inquiry by buyers whether the ripple was termite damage imposed a duty upon sellers to disclose what information they knew concerning the existence of termite infestation in the residence.

**4.** Sellers acknowledge that a duty of disclosure would exist if live termites were present. *Obde v. Schlemeyer,* 56 Wash.2d 449, 353 P.2d 672 (1960).

tion." *Lynn v. Taylor,* 7 Kan.App.2d at 371, 642 P.2d at 134–35. For example, termite damage substantially affecting the structural soundness of the residence may be material even if there is no evidence of present infestation. Unless reasonable minds could not differ, materiality is a factual matter which must be determined by *the trier of fact. The termite damage in* this case may or may not be material. Accordingly, we conclude that buyers should be allowed to present their case to a jury.

Sellers argue that even assuming the existence of a duty to disclose, summary judgment was proper because the record shows that their "silence ... did not induce or influence" the buyers. This is so, sellers contend, because Mr. Hill stated in his deposition that he intended to rely on the termite inspection report. But this argument begs the question. If sellers were fully aware of the extent of termite damage and if such information had been disclosed to buyers, a jury could accept Mr. Hill's testimony that had he known of the termite damage he would not have purchased the house.

■ Sellers further contend that buyers were put on notice of the possible existence of termite infestation and were therefore "chargeable with the knowledge which [an] inquiry, if made, would have revealed." *Godfrey v. Navratil,* 3 Ariz.App. 47, 51, 411 P.2d 470 (1966) (quoting *Luke v. Smith,* 13 Ariz. 155, 162, 108 P. 494, 496 (1910)). It is also true that "a party may ... reasonably expect the other to take normal steps to inform himself and to draw his own conclusions." *Restatement* § 161 comment d. Under the facts of this case, the question of buyers' knowledge of the termite problem (or their diligence in attempting to inform themselves about the termite problem) should be left to the jury.[5]

By virtue of our holding, sellers' cross-appeal is moot. Reversed and remanded.

CONTRERAS, P.J., and YALE McFATE, J. (Retired), concur.

5. Sellers also contend that they had no knowledge of any existing termite damage in the house. An extended discussion of the facts on

Note: The Honorable Yale McFate, a retired judge of the Court of Appeals, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20.

this point is unnecessary. Simply stated, the facts are in conflict on this issue.