528 P.2d 1257

Donald H. HUBBS and Flora M. Hubbs, husband and wife, George S. Baker, Jr., and Elizabeth C. Baker, husband and wife, Fred S. Jahn and Carol L. Jahn, husband and wife, Paul W. Green and Marilyn D. Green, husband and wife, and Irving Whitney Lyon, Jr., Appellants and Cross-Appellees,

v.

William J. COSTELLO, Appellee,

Stewart Title and Trust of Phoenix, a corporation, Appellee and Cross-Appellant.

No. I CA–CIV 1775.

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 17, 1974.

Donald D. Meyers of Meyers, Curtis & Kromer, Phoenix, for appellants and cross-appellees.

Burch, Cracchiolo, Levie, Guyer & Weyl, by Daniel P. Cracchiolo, Phoenix, for appellee Costello.

Lewis & Roca, by John P. Frank and Mary M. Schroeder, Phoenix, for appellee and cross-appellant Stewart Title and Trust of Phoenix.

## OPINION

HAIRE, Presiding Judge.

The basic question raised on this appeal is whether the trial judge erred when he granted the defendants' motions for directed verdicts, thereby denying plaintiffs any relief on their complaint. Subsidiary to the basic question are issues relating to election of remedies, the legal requirements for proving a claim for relief based upon innocent or negligent misrepresentations, and the sufficiency of the evidence in support of such a claim.[1]

The background facts involve a sale by the plaintiffs-appellants of certain apartments situated in Phoenix, Arizona in exchange for a small amount of cash and for an interest in a subdivision trust relating to land in the Harquahala Valley, Maricopa County, Arizona. The purchaser of plaintiffs' apartments, defendant-appellee Costello, was the owner of the subdivision trust interest which was transferred to the plaintiffs. The other defendant-appellee is the title company which had acted as trustee of the subdivision trust. Defendant Costello paid $5,000 in cash, assumed a previously existing mortgage on the apartments, and agreed to pay approximately $178,000 additional. The $178,000 was to come from an assignment to plaintiffs of Costello's right to receive in the future certain proceeds as the first beneficiary of a subdivision trust designated as Stewart Title Trust No. 1147, with the defendant title company as the trustee.

The subdivision trust was a standard type widely used in Arizona real estate transactions in which an installment buyer's ob-

jective is to sell a purchased larger tract of real estate in smaller parcels, usually lots, and then use the funds generated by these sales to pay off his obligations under the original contract to the initial seller. The title company functions as a title-holding trustee, collects the funds from the lot purchasers for the benefit of the original seller (first beneficiary) and the original buyer (second beneficiary), and passes title to the lot purchaser when the lot purchaser's contractual obligations have been met. The second beneficiary generally, as in this particular trust agreement, is required to pay certain annual installments on the purchase price, which must be met regardless of the amount of funds generated from the sales of lots.

Although negotiations had commenced between the plaintiffs and Costello in October of 1963, the transaction did not close until February 7, 1964. Prior to the closing the first annual installment of some $25,000 required under Trust No. 1147 had become due on January 2, 1964, and the second beneficiary, Muse Agencies, Inc., had not been able to make the payment. Therefore, on February 4, 1964, three days before the closing, Costello and Muse Agencies, Inc. entered into an arrangement consisting of two written agreements. One of these agreements was entitled "Amendment to Trust Agreement", and constituted an amendment to Subdivision Trust No. 1147, essentially postponing the schedule of annual payments for one year, thereby making the first annual payment due on January 2, 1965. The other agreement was entitled "Collateral Assignment of Proceeds". This latter agreement specifically recited Muse's default under Trust No. 1147, and then proceeded to set forth that in consideration of Costello's agreement to amend the trust and extend the time for payment of the first annual installment, Muse would assign to Costello as security for the payment due under Trust No. 1147 on January 2, 1965, the amount of $25,395 from proceeds which

---

1. Although plaintiffs' complaint alleged both fraudulent and negligent misrepresentations, on appeal plaintiffs have expressly disavowed any contention that the evidence presented was sufficient to justify relief on a fraud theory.

might be due Muse at that time under an entirely different subdivision trust, designated as Trust No. 1157. The agreement further provided that if Muse timely made the payment due on January 2, 1965, then the security assignment would be of no further force or effect. Inasmuch as this first annual payment originally due January 2, 1964 was part of the proceeds of Trust No. 1147 which were to be assigned to the plaintiffs, their consent to the extension and their knowledge of Muse's stated default were evidenced by each one of them initialing the above described collatral assignment of proceeds.

As previously stated, three days later on February 7, 1964 the matter proceeded to a closing. The agreement between Costello and the plaintiffs was entitled "Assignment for Security" and contained appropriate provisions covering the terms previously discussed herein. In addition, the agreement contained provisions which essentially limited plaintiffs' rights in the event of Muse's failure to timely make the annual payment to such rights as might exist under the subdivision trust agreement. In other words, in such event the plaintiffs would succeed to all of Costello's interest as first beneficiary under Trust No. 1147, but Costello would have no personal liability.[2]

In late 1964, some ten months after the closing, it became apparent that the previously extended annual payment due in January 1965 could not be made. Therefore, on December 7, 1964 the plaintiffs agreed to a new extension which postponed the annual payments until January 2, 1968.

On October 7, 1966, some two and one-half years after the closing of the transaction, the plaintiffs filed their initial complaint alleging that they were the victims of fraudulent misrepresentations by the defendants, and sought rescission of the contract or in the alternative, damages. Approximately four years later, on May 13, 1970, plaintiffs filed their amended complaint, which among other changes not material to this opinion, added as an alternative allegation that the alleged misrepresentations were negligently made. In both the original complaint and the amended complaint the plaintiffs urged two misrepresentations as the basis for their claims against the defendants. These were:

1. That the defendants had represented that the real property taxes levied against the corpus of Trust No. 1147 were current when in fact they were delinquent and the land had been "sold" by the taxing authorities in lien foreclosure proceedings; and

2. That the defendants had represented that at the time of the closing there were twenty-seven contracts of sale in effect in Trust No. 1157 (the trust involved in the assignment by Muse to secure the one year grace period), having an outstanding balance of $330,000, when in fact many of the contracts were not current and in some no payment had been made.

Plaintiffs did not contend that they had been directly damaged by the alleged delinquency in taxes.[3] Rather, their complaint concerning the representation that the taxes were current went to the inducing effect of the representation. Essentially, their position appears to be that if they had known that the taxes were delinquent, they would have been put on notice of the inability of Muse to perform under Trust No. 1147, and therefore would not have been willing to accept an assignment of defendant Costello's rights to receive future proceeds from that trust, such proceeds being directly dependent upon performance by Muse of its duties under that trust. Likewise, the plaintiffs contend that if they had known that many of the contracts in Trust No. 1157 were delinquent, they would not have considered an assignment of future proceeds from that trust as constituting adequate security for the payment of the extended first annual installment under

---

2. Plaintiffs would also have the benefit of the February 3, 1964 collateral assignment of proceeds from Muse's interest in Trust No. 1157.

3. The record indicates that these taxes were in fact paid some four years thereafter and the land redeemed from the tax lien.

Trust No. 1147, and therefore would not have entered into the transaction with the defendant Costello.

## PROOF OF NEGLIGENT MIS-REPRESENTATIONS

■ It is now established in Arizona law that notwithstanding the absence of an intent to deceive, an action for rescission may be founded upon a misrepresentation innocently or negligently made. In Lehnhardt v. City of Phoenix, 105 Ariz. 142, 460 P.2d 637 (1969), the Arizona Supreme Court held that a claim for rescission could be established by a showing of a representation made by the defendant contracting party, the representations' falsity, its materiality, and the fact that it was an inducing cause for plaintiffs' entering into the contract.

Here the facts, taken in a light most favorable to plaintiffs, show that the alleged misrepresentation concerning taxes was in fact made by both defendant Costello and the defendant title company, and that it was false. However, the delinquent taxes were considerably less than $1,000, an insignificant amount when compared to the value of the properties here involved.

■ Concerning the alleged misrepresentations relating to the status of the contracts in Trust No. 1157, although there is evidence that approximately one-third of these contracts were delinquent at the time of the closing, the plaintiffs have failed to present to this Court any citations to the record which would support a finding that either defendant prior to closing represented that all the contracts in Trust No. 1157 were in fact *current*.[4] This Court is not under any obligation to search a voluminous record[5] to ascertain if such evidence exists. Tovrea Land and Cattle Company v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966). Therefore the alleged misrepresentation as to the status of the contracts

in Trust No. 1157 will not be further considered.

■ In Lehnhardt v. City of Phoenix, *supra*, the Arizona Supreme Court recognized that before rescission could be granted based upon a negligent or innocent misrepresentation, it must appear that the false representation was material and an inducing cause for plaintiffs' entering into the contract. A misrepresentation is material where it "would be likely to affect the conduct of a reasonable man with reference to. . . ." the transaction in question. Restatement of Contracts § 470(2). It has been said that the requirement of materiality is to provide "some assurance that the representee is not merely using the misrepresentation as a pretext for escaping a bargain that he is dissatisfied with on other grounds." Prosser, Law of Torts, 4th Ed. p. 719. Here, the delinquent tax amounts involved were insignificant when considered in relation to the dollar amount involved in the transaction between the parties. At the time of the closing, the plaintiffs, knowing that Muse Agencies, Inc., the party responsible for payment of the taxes, had defaulted in the payment of the first annual installment of some $25,000, nevertheless proceeded with the closing and in fact expressly consented to a one year extension of time for the making of said payment. Under these circumstances we agree with the trial court's implied finding that, as a matter of law, the minor misrepresentation concerning the delinquent taxes could not be considered as a material inducing misrepresentation of sufficient substance to support the remedy of rescission.

■ In arriving at the foregoing conclusion we recognize that although in an equity matter the jury's verdict is only advisory and may be entirely disregarded by the trial judge as the ultimate trier of fact, nevertheless, when a jury trial has

---

4. Exhibit 16, apparently relied upon by plaintiffs, even if we interpret its reference to "accounts" as including "contracts", refers only to Trust No. 1147, and not to Trust No. 1157.

5. The transcript of the record contains in excess of 2400 pages and there are some 132 exhibits.

been demanded in an equity matter, the trial judge may not by directed verdict withdraw the case from the jury's consideration except where a directed verdict would be justified if it were an action at law. Haynie v. Taylor, 69 Ariz. 339, 213 P. 2d 684 (1950); Slonsky v. Hunter, 17 Ariz. App. 231, 496 P.2d 874 (1972). Here, considering the evidence and the inferences therefrom in a light most favorable to plaintiffs, reasonable minds could not differ and the trial judge would have been constrained to disregard or set aside any jury verdict in plaintiffs' favor. Therefore the directed verdict was justified. Davis v. Weber, 93 Ariz. 312, 380 P.2d 608 (1963); Steele v. Vanderslice, 90 Ariz. 277, 367 P.2d 636 (1962).

Although the two alleged misrepresentations discussed above were the only misrepresentations set forth in plaintiffs' original complaint filed in 1966 and in the amended complaint filed four years later in 1970, and, although the trial court specifically denied plaintiffs' post-trial motion to further amend the complaint to conform to the evidence and no error is alleged concerning said denial, on this appeal plaintiffs present several additional alleged misrepresentations as furnishing support for their claimed right of rescission. We have considered these additional claimed misrepresentations, and find that in some instances the record cited to this Court simply does not support the claimed misrepresentation or its falsity. We have previously alluded to appellants' responsibility to furnish this Court with accurate and complete citations to the record concerning factual allegations. Tovrea Land and Cattle Company v. Linsenmeyer, *supra*. In other instances the claimed misrepresentations are inconsequential and immaterial, and could not reasonably be considered as furnishing any support for plaintiffs' claimed right of rescission. The briefs of the appellees adequately point out these deficiencies and it would inordinately extend this opinion to discuss each in detail. Suffice it to say that the recently discovered inducing effect of these various alleged misrepresentations adequately emphasizes the importance of the elements of materiality and reliance which have been carefully written into the law of rescission. Years after the transaction the unhappy purchaser, disturbed by market shifts affecting the economics of his transaction, cannot be allowed to search for and seize upon relatively unimportant erroneous statements made to him during the course of the transaction, and thereby be relieved of the consequences of his duly undertaken contractual commitments.

Near the conclusion of the presentation of plaintiffs' case, the trial judge, in accordance with a ruling entered prior to the presentation of any evidence, required plaintiffs to make an election as to whether they desired to rescind the transaction or rely strictly on the remedy of damages. The plaintiffs elected to rescind the transaction as to the defendant Costello, and to recover from Costello all compensation and property that would put them back in *status us quo ante*, and to recover from the defendant Stewart Title the equivalent in damages "that would do the same thing". On this appeal they urge that the trial court erred in requiring an election prior to completion of the presentation of all the evidence. If our decision on this appeal were based upon a holding that the plaintiffs had failed to prove their right to rescission based upon some defense peculiar to equitable remedies, or a failure to make adequate tender in rescission, then the question of the propriety of the required election might be pertinent to the disposition of this appeal. However, our decision is not based upon such grounds. In our opinion plaintiffs' evidence was not sufficient to justify submission to the jury for relief of any kind on any theory presented, and therefore we need not decide whether the required election was proper.

The judgment entered by the trial court is affirmed.

JACOBSON, C. J., and EUBANK, J., concur.