**LA PLACITA PARTNERS, Plaintiff,**

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, et al., Defendants.**

**No. C88–2824.**

United States District Court, N.D. Ohio, E.D.

Nov. 15, 1990.

Donald S. Scherzer, Sarah Gabinet, Kohrman, Jackson & Krantz, Cleveland, Ohio, and Roland W. Donnem, Beachwood, Ohio, for plaintiff.

Theodore M. Grossman, David G. Heiman, Stephen J. Kaczynski, Jones, Day, Reavis & Pogue and Michael E. Jackson, Arter & Hadden, Cleveland, Ohio, for defendants.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On August 1, 1988, La Placita Partners, plaintiff, filed the above-captioned case against Northwestern Mutual Life Insurance Company, Northwestern Mutual Life Mortgage & Realty Investors Corp., Northwestern Mutual Life Mortgage & Realty Investors (collectively referred to as "NML"), and La Placita Land Trust, defendants,[1] alleging Arizona state law claims of fraud, breach of fiduciary duty, breach of contract, breach of implied warranty, and negligent misrepresentation arising out of its purchase of "La Placita Village" from NML in November, 1980. On February 10, 1989, it amended its complaint to omit the allegation of breach of implied warranty. Jurisdiction is proper under 28 U.S.C.A. § 1332 (West Supp.1990). The case is before the court on NML's motion for summary judgment. For the following reasons, the motion is granted and the case is dismissed.

### I.

La Placita Village is an office/retail complex consisting of thirteen buildings and a parking garage located on leased land in Tucson, Arizona. Its first owner was La Placita Development Company; the construction lender was Northwestern Mutual Life Mortgage & Realty Investors ("NML Mortgage"). It was officially opened in May, 1974, and was substantially completed by November of the same year. By the time of its completion, the owners had been successful in leasing only about thirty percent of the available space. In late November, 1974, NML Mortgage commenced foreclosure proceedings. La Placita Village was thereafter placed into receivership until it was purchased at public auction by NML Mortgage in April, 1979.

On June 11, 1979, Thomas Slavin, a lawyer and real estate syndicator who was looking for a "turn-around" property,[2] wrote to Donald O'Dell of NML Mortgage on behalf of Cleveland Investment Development Company, a real estate development company owned by Slavin and Donald

---

**1.** Northwestern Mutual Life Mortgage & Realty Investors Corp. and Northwestern Mutual Life Mortgage & Realty Investors were dissolved sometime between the events at issue in this case and the filing of the complaint; their assets have since been acquired by Northwestern Mutual Life Insurance Company. Complaint at 1, ¶ 2; Amended Answer at 1, ¶ 2. On December 1, 1988, La Placita Land Trust, an Ohio trust, was dismissed voluntarily by stipulation of all parties pursuant to Fed.R.Civ.P. 41(a)(1)(ii).

For the purposes of this opinion, the defendants shall be collectively referred to as "NML" unless it is otherwise necessary to name a specific defendant.

**2.** A "turn-around" property is one which has been operating at a financial loss and which the investor believes can be "turned around" to operate at a profit.

Johnson, another real estate syndicator and a general contractor, to express interest in purchasing La Placita Village. On November 12, 1979, Slavin sent a second letter to O'Dell describing the business background of each of the six partners of "J. MAPPS," another real estate development group managed by Slavin and Johnson, which included representations as to the extensive real estate development experience of three of its partners: Slavin, Robert Messing, and Johnson. That same month, J. MAPPS began meeting with NML Mortgage to negotiate the purchase of La Placita Village.

During the negotiations, Slavin, Johnson, and others employed by them were given unlimited access to inspect La Placita Village, including many unfinished areas where sprayed-on fireproofing could be seen on exposed overhead structural beams. Slavin and Messing conducted walk-through inspections of the property on at least two occasions in late 1979, and Johnson, a general contractor familiar with the use of asbestos as insulation and fireproofing, performed in April, 1980, a formal inspection of the property, including its heating, air conditioning, ventilation, plumbing, sewer, electrical, fire sprinkler, and emergency evacuation systems in April, 1980.

In September, 1980, Slavin and Johnson contracted to purchase La Placita Village through a shell corporation, Winthrop Development Corp. The Purchase Agreement contained the following paragraph:

> Inasmuch as Buyer has inspected the heating, air conditioning, plumbing, sewer, electrical and other mechanical systems, electrical fixtures and equipment, and roofs of the buildings located on the Premises, the same shall be conveyed by Seller on an "as is" basis.

Purchase Agreement for Real Estate at 20.

The sale became final on November 17, 1980, at which time Winthrop Development Corp. assigned title to the land underneath the village to La Placita Land Trust[3] and title to the buildings to Slavin's and Johnson's newly-formed entity, "La Placita Partners," with J. MAPPS serving as general partner.

Following its purchase of La Placita Village, La Placita Partners sustained continuous and unremitting losses due to mismanagement and unchecked physical deterioration of the property. By December, 1983, it had ceased paying land rent to La Placita Land Trust. By the beginning of 1984, it had also fallen behind on its mortgage obligations to NML,[4] was in debt to various trade creditors, and was in arrears on its real estate taxes. It then began to look for refinancing, but its efforts were unsuccessful. Over the next two years, it had been turned down by seven commercial lenders.

In December, 1986, La Placita Partners applied for refinancing from Heller Financial, Inc. ("Heller"), a lender of last resort. At the same time, NML threatened foreclosure. In February, 1987, NML, after notifying La Placita Partners of its intent to foreclose, agreed to forebear taking immediate action to allow La Placita Partners to obtain refinancing. On April 3, 1987, Heller issued to La Placita Partners a "Standing Mortgage Loan Commitment" predicated on two conditions: first, that the owner of the land underneath an adjacent parking garage, the Rosenbaum Marital Trust, agree to sell the land to La Placita Partners for not more than $800,000.00; and second, that Heller be allowed to retain an independent consultant, at borrower's expense, to inspect the property to ensure that there was no asbestos or asbestos product in the fireproofing, insulation, or ceiling tiles. The commitment was to expire on April 28, 1987. Because La Placita Partners did not obtain an agreement to purchase the land underneath the adjacent parking garage before April 28, the commitment expired under its own terms. On May 18, 1987, Heller issued an "Amended and Restated Standing Mortgage Loan"

---

**3.** Slavin served as agent and advisor to La Placita Land Trust. It has since been dismissed as a party in this case. See *supra* note 1.

**4.** On January 7, 1983, NML Mortgage assigned its interest in La Placita Village to NML Mortgage & Realty Investors Corp., which in turn assigned its interest in the property to NML Insurance Company. See *supra* note 1.

which was set to expire on May 26, 1987. The amended commitment restated the same conditions as the first; however, it allowed for a delayed closing date on the purchase of the land underneath the parking garage of "not later than 60 days after the death of the beneficiary of the Rosenbaum Marital Trust," and allowed a higher purchase price to be paid for the land, provided that the price was acceptable to Heller and that it was given a letter of credit for the amount in excess of $800,-000.00. By the time the amended commitment expired, an independent consultant's survey had revealed the presence of asbestos in the fireproofing and floor tiles of La Placita Village; in addition La Placita Partners had not obtained the necessary agreement to purchase the land from the Rosenbaum Marital Trust. Because La Placita Partners did not meet either of the two conditions prerequisite to securing a loan from Heller, the amended commitment expired under its own terms on May 26, 1987.

On July 14, 1987, META Operating Limited Partnership, of which Slavin was managing partner, was substituted for J. MAPPS as general partner of La Placita Partners. On the same date, La Placita Partners filed for reorganization under chapter 11 of the Bankruptcy Code. In February, 1988, NML obtained a relief from stay in the bankruptcy proceeding and took possession of La Placita Village.

## II.

On August 1, 1988, La Placita Partners filed suit against NML seeking rescission of the purchase of La Placita Village, a return of the money paid by it to NML under the mortgage, compensatory and punitive damages, and attorneys' fees. It argues that NML had both a duty to disclose to it the presence of asbestos in the fireproofing and floor tiles of La Placita Village and a duty to warn it that exposure to asbestos fibers can be harmful to human

health. It further argues that it would not have purchased the property had it known of the presence and dangerousness of asbestos.

NML moves for summary judgment on the ground that it had no duty under Arizona law to warn La Placita Partners about the presence or significance of asbestos in La Placita Village because the parties negotiated the sale in an "arm's-length" transaction pursuant to which La Placita Partners was given unlimited access and opportunity to inspect every inch of La Placita Village, including unfinished areas where the asbestos fireproofing was clearly visible, before taking the property in "as is" condition under the Purchase Agreement.[5]

## III.

A court may grant summary judgment for a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden "of informing the court of the basis for its motion and identifying those portions of the record demonstrating the absence of a material issue of fact." *Vollrath v. Georgia–Pacific Corp.*, 899 F.2d 533, 535 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 345, 112 L.Ed.2d 310 (Oct. 29, 1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once this has been done, the burden of production shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party may do this "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. If the nonmoving

---

**5.** NML also moves for summary judgment on the grounds that plaintiff cannot establish that it was injured by the discovery of asbestos at La Placita Village, that this action is barred by both the Arizona and Ohio statutes of limitations, and that plaintiff is barred from seeking eq-

uitable relief under the "doctrine of unclean hands." Because these grounds are asserted as supplemental grounds in addition to NML's primary ground of "no duty to warn," and are not necessary to the court's ruling, these grounds will not be addressed.

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there [is] 'no genuine issue as to any material fact[,]'" *id.* at 322–23, 106 S.Ct. at 2552, and summary judgment in favor of the moving party is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

The claims asserted in La Placita Partners' amended complaint share common essential elements of concealment, materiality, reliance, and damages. *See, e.g., Peery v. Hansen*, 120 Ariz. 266, 269, 585 P.2d 574, 577 (Ct.App.1978) (common-law fraud); *Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 492, 484 P.2d 639, 645 (1971) (negligent misrepresentation); *Lehnhardt v. City of Phoenix*, 105 Ariz. 142, 460 P.2d 637, 639 (1969) (breach of contract).[6] Accordingly, if it cannot set forth facts sufficient to establish the existence of each of these elements, all of its claims must fail, and summary judgment must be granted in favor of NML. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

In order to withstand a motion for summary judgment, La Placita Partners must show that NML had a legal duty under Arizona law to inform it about the presence of asbestos in La Placita Village, that it considered the presence of asbestos to be material to its decision to purchase La Placita Village, that it relied on NML's silence as to the presence of asbestos, and that it sustained damages as a result of its reliance.

### A.

■ The general rule in Arizona is that no duty to disclose exists between a buyer and seller of real estate absent special circumstances, such as a confidential relationship between the parties, or if the buyer specifically inquires about the suspected defect. *Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 127 Ariz. 213, 215, 619 P.2d 485, 487 (Ct.App.1980); *cf. Hill v. Jones*, 151 Ariz. 81, 84, 725 P.2d 1115, 1118 (Ct. App.1986) (duty to disclose material facts if confidential relationship exists between parties). No confidential relationship exists between parties to an "arm's-length" transaction. *Universal*, 127 Ariz. at 215, 619 P.2d at 487. Further, if the buyer makes no inquiry, and relies upon his own inspection of the property, he has no right to rely on the seller's silence as to alleged defects in, or physical conditions of, the property that are easily discoverable upon inspection. *Universal*, 127 Ariz. at 215, 619 P.2d at 487. This rule is specifically applicable to property that is sold "as is." *Id.; accord Kaye v. Buehrle*, 8 Ohio App.3d 381, 457 N.E.2d 373, 376 (1983); *Omernik v. Bushman*, 151 Wis.2d 299, 444 N.W.2d 409, 411 (Ct.App.1989). An "as is" clause in a contract puts the buyer on notice that the property may be defective, and precludes the buyer from justifiably relying on the seller's silence as a warranty of fitness. *Universal*, 127 Ariz. at 215, 619 P.2d at 487.

Here, not only was La Placita Partners put on notice that NML was making no warranties as to the condition of the property because of the "as is" clause of the Purchase Agreement, it has admitted that at least two of the three controlling partners who inspected the property *actually saw* the sprayed-on fireproofing in the unfinished areas, *see* Deposition of Thomas Slavin at 243, 261; Deposition of Robert Messing at 62,[7] and that all three were

---

**6.** La Placita Partners' fourth claim, breach of fiduciary duty, is dismissible on its face because no fiduciary relationship exists between parties to an "arm's-length" transaction, *Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 127 Ariz. 213, 215, 619 P.2d 485, 487 (Ct.App.1980), and creditors cannot be held to be acting in a fiduciary capacity absent their exercise of "virtually complete control" over the borrower. *See, e.g., In re Pinetree Partners, Ltd.*, 87 B.R. 481, 489 (Bankr.

N.D.Ohio 1988); *Umbaugh Pole Building Co. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320, 323 (1979); *Stenberg v. Northwestern Nat'l Bank*, 307 Minn. 487, 238 N.W.2d 218, 219 (1976). There is no evidence of such control here.

**7.** Although a third partner, Donald Johnson, testified in a deposition that he did not recall whether he saw the sprayed-on fireproofing at La Placita Village, he admits that he inspected

aware that asbestos was commonly used as a fire retardant. *See* Slavin Depo. at 261, 303; Johnson Depo. at 33, 72–74; Messing Depo. at 62–64. Further, one of the partners admitted in his deposition that he was aware that asbestos exposure could be dangerous to human health. *See* Johnson Depo. at 44. Because La Placita Partners was put on notice of a possible defect, was given unfettered opportunity to make its own inspection of the property, and was aware of the possible presence of asbestos on the property, it cannot now claim that NML had a duty to warn it of the presence of asbestos. Accordingly, summary judgment in favor of NML is appropriate for this reason alone.

### B.

■ Even if NML had a duty to disclose to La Placita Partners that the fireproofing at La Placita Village contained asbestos, summary judgment must still be granted in favor of NML because plaintiff has unequivocally admitted that it would have purchased La Placita Village notwithstanding the presence of asbestos. This precludes it from establishing that the presence or absence of asbestos was "material" to its decision to purchase the property or that it "relied on" NML's nonrepresentation. " 'A matter is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction in question.' " *Hill,* 151 Ariz. at 85–86, 725 P.2d at 1119–20 (quoting *Lynn v. Taylor,* 7 Kan.App.2d 369, 642 P.2d 131, 134–35 (1982)); *see also Hubbs v. Costello,* 22 Ariz.App. 498, 501, 528 P.2d 1257, 1260 (1974). It follows that for a representation or nonrepresentation to be material, the recipient must have relied on the statement. To establish reliance in such a case, a plaintiff must show that it would have acted differently had it known of the circumstances of which it now complains. *See Hill,* 151 Ariz. at 85–86, 725 P.2d at 1119–20. A dissatisfied purchaser cannot seize upon a fact considered immaterial at the time of purchase

to later escape the consequences of its contractual commitments. *Hubbs,* 22 Ariz. App. at 502, 528 P.2d at 1261.

In this case, it is clear that plaintiff did not consider the presence or absence of asbestos to be material to its decision to purchase the property, nor would it have acted differently if it were told that the building contained asbestos. The deposition testimony of both Slavin and Johnson contradict their present claims of materiality and reliance. Johnson's testimony negates plaintiff's claim of materiality:

> Q. So it didn't make any difference to you, whether the floor tiling contained asbestos or the fireproofing contained asbestos?
>
> A. That's correct.

Johnson Depo. at 74.

Slavin's testimony negates the claim of reliance:

> Q. So it is your testimony then if you had known in 1980 that the spray-on fireproofing had contained asbestos, it wouldn't have affected your conduct?
>
> A. It would not have affected my conduct at that time.

Slavin Depo. at 304.

La Placita Partners neither considered the presence of asbestos to be material, nor did it rely on NML's nonrepresentations as to its presence to confirm its absence; therefore, La Placita Partners has failed to establish an element essential to each of its claims of fraud, misrepresentation, and breach of contract.

### IV.

Because defendant had no duty to disclose to plaintiff the presence of asbestos, and because plaintiff's own statements preclude it from establishing the elements of materiality and reliance essential to all of its claims, defendant is entitled to judgment as a matter of law.

---

for adequate fire protection, that he saw the exposed ceiling beams, and that he probably would have considered the lack of fireproofing

on structural beams to be a noticeable defect. *See* Deposition of Donald Johnson at 68–74.

Accordingly, NML's motion for summary judgment is granted, and the case is dismissed.

IT IS SO ORDERED.