322 P.3d 909

Glen J. LERNER and Robynn Lerner, a married couple, Plaintiffs/Appellants,

v.

DMB REALTY, LLC, a Delaware limited liability company; Jeff Currier and Marissa Currier, a married couple, Defendants/Appellees.

No. 1 CA–CV 11–0339.

Court of Appeals of Arizona, Division 1.

Feb. 13, 2014.

Kercsmar & Feltus, PLLC, Scottsdale, By Todd Feltus, William T. Luzader, III, Counsel for Plaintiffs/Appellants.

Manning & Kass, Ellrod, Ramirez, Trester, LLP, Scottsdale, By Robert B. Zelms, Anthony S. Vitagliano, Counsel for Defendants/Appellees DMB Realty.

Ballard Spahr, LLP, By Brian Schulman, Craig C. Hoffman, Phoenix, Counsel for Defendants/Appellees Curriers.

## 400

### OPINION

### As Modified

JOHNSEN, Judge.

¶ 1 After Glen and Robynn Lerner unwittingly bought a home next door to a registered sex offender, they sued the couple who sold them the home and the real estate broker that represented both couples in the transaction. The defendants moved to dismiss, arguing the Lerners' claims of fraud, misrepresentation and breach of fiduciary duty were barred by the sales documents and by Arizona Revised Statutes ("A.R.S.") section 32-2156(A)(3) (2014), which prohibits a civil action against a seller or real estate broker for failing to disclose that a home is located "in the vicinity of a sex offender." [1]

¶ 2 In the Lerners' appeal from the superior court's dismissal of their complaint, we hold A.R.S. § 32-2156(A)(3) bars their claim against the sellers for failing to disclose the presence of the sex offender and reject the Lerners' contention that the statute unconstitutionally abrogates their right to sue for damages. We also hold the representation agreement the Lerners signed bars their claim for breach of fiduciary duty against the broker, but we reverse the dismissal of the Lerners' fraud claim against the sellers and remand for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

¶ 3 According to the complaint, Jeff and Marissa Currier decided to sell their Scottsdale home because a convicted sex offender lived next door. In negotiating to sell to the Lerners, the Curriers did not tell them about the sex offender, even though they knew the Lerners had small children and wanted to live in a safe neighborhood. When the Lerners asked the Curriers why they were selling, the Curriers said they wanted to move to be closer to friends.

¶ 4 The Curriers provided the Lerners with a Residential Seller's Property Disclosure Statement that contained the customary information about the condition of the home, its plumbing system, utilities, the presence of insects and so forth. On the last page, the Disclosure Statement asked the sellers, "What other material (important) information are you aware of concerning the Property that might affect the buyer's decision-making process, the Value of the Property, or its use?" The Curriers left that section blank. A few inches below, and just above where the Lerners signed to signify their receipt of the Disclosure Statement, was the following printed statement: "**Notice:** Buyer acknowledges that by law, Sellers, Lessors and Brokers are not obligated to disclose that the Property is or has been . . . located in the vicinity of a sex offender." A statement affixed to the front of the Disclosure Statement, titled "Residential Seller Advisory," explained more fully:

> **Please note:** By law, sellers are not obligated to disclose that the property is or has been (1) the site of a natural death, suicide, homicide . . . . . . or (3) located in the vicinity of a sex offender. However, the law does not protect a seller who makes an intentional misrepresentation. For example, if you are asked whether there has been a death on the property and you know that there was such a death, you should not answer "no" or "I don't know"; instead you should either answer truthfully or respond that you are not legally required to answer the question.

¶ 5 A section of the form purchase agreement titled "Inspection Period" stated, "If the presence of sex offenders in the vicinity . . . is a material matter to the Buyer, it must be investigated by the Buyer during the Inspection Period." The contract allowed a 14-day inspection period and further provided that the Lerners had "conducted all desired independent inspections and investigations and accept[ ] the Premises." Another section of the contract stated, "Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises except disclosed as follows: _____." The Lerners initialed the word "None" handwritten in the space that followed.

¶ 6 Both couples agreed to a dual representation agreement with DMB Realty, LLC,

1. Absent material revision after the relevant date, we cite a statute's current version.

by which DMB purported to undertake limited representation of each of them in the sale. The agreement addressed DMB's disclosure obligations as follows:

a) [DMB] represents both the Buyer and the Seller with limitations of the duties owed to the Buyer and the Seller, such as:

\* \* \*

(2) There will be conflicts in the duties of loyalty, obedience, disclosure and confidentiality. Disclosure of confidential information may be made only with written authorization. This does not relieve [DMB] of any legal obligation to disclose all known facts which materially and adversely affect the consideration to be paid by any party to the transaction.

(3) Pursuant to A.R.S. § 32–2156, Sellers, Lessors and Broker/Licensee(s) are not obligated to disclose that the Subject Property is or has been ... located in the vicinity of a sex offender.

¶ 7 Six months after signing the purchase agreement, and after having moved into the home, the Lerners discovered that their neighbor is a "level-one" sex offender.[2] The Lerners filed a complaint for damages against the Curriers and DMB, alleging that if they had known of the sex offender, they would not have purchased the house. The complaint alleges negligent misrepresentation, common-law fraud and breach of the duty of good faith and fair dealing by the Curriers and breach of fiduciary duty and breach of the covenant of good faith and fair dealing by DMB. The complaint does not seek to rescind the sales contract, but demands unspecified compensatory and punitive damages against the Curriers and DMB.

¶ 8 The Curriers and DMB moved to dismiss under Arizona Rule of Civil Procedure 12(b)(6) for failure to state a claim. Both argued the complaint was barred as a matter of law by the terms of the contracts and by

A.R.S. § 32–2156(A)(3). The Lerners responded that to the extent the statute applies to their claims, it impermissibly restricts their right to sue for damages under the anti-abrogation clause of the Arizona Constitution. The superior court granted the motions to dismiss, ruling the Lerners' claims were barred both by the relevant contracts and by the statute.

¶ 9 The Lerners timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and pursuant to A.R.S. §§ 12–120.21(A)(1) and –2101(A)(1) (2014).

## DISCUSSION

### A. Standard of Review.

■■■ ¶ 10 When reviewing a dismissal for failure to state a claim under Rule 12(b)(6), we "assume the truth of the well-pled factual allegations [in the complaint] and indulge all reasonable inference therefrom." *Cullen v. Auto–Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008). "Dismissal is appropriate under Rule 12(b)(6) only if 'as a matter of law [ ] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8, 284 P.3d 863, 867 (2012) (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998)). We review *de novo* an order dismissing a complaint pursuant to Rule 12(b)(6). *Coleman*, 230 Ariz. at 355, ¶ 7, 284 P.3d at 866. We apply the same standard of review to issues of contract interpretation. *Elm Retirement Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15, 246 P.3d 938, 941 (App.2010).[3]

■■■ ¶ 11 We address the constitutionality of a statute only when circumstances require us to do so. *See, e.g., Zobrest v. Catalina*

---

2. Law enforcement agencies assign each convicted sex offender a risk assessment level based on the risk he or she poses to the community. A.R.S. § 13–3826(E)(1) (2014). A "level-one" offender is considered less of a risk than a "level-two" or "level-three" offender.

3. Although the superior court considered the purchase agreement, the Disclosure Statement

and the dual representation agreement in deciding whether to dismiss the complaint, the court was not required to treat the motions to dismiss as motions for summary judgment pursuant to Rule 12(b) because those documents were central to the Lerners' claims. *See Coleman*, 230 Ariz. at 356, ¶ 9, 284 P.3d at 867.

*Foothills Sch. Dist.,* 509 U.S. 1, 7, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993); *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n,* 177 Ariz. 256, 259, 866 P.2d 1342, 1345 (1994). For that reason, before considering whether § 32–2156(A)(3) violates the anti-abrogation clause, we first determine whether the Lerners' complaint states a claim for relief to which the statute might apply.[4]

### B. Claims Against the Curriers.

#### 1. The fraud claim.

¶ 12 A fraud claim requires proof that the defendant made "a false and material representation, with knowledge of its falsity or ignorance of its truth, with intent that the hearer would act upon the representation in a reasonably contemplated manner," and that the plaintiff, "ignorant of the falsity of the representation, rightfully relied upon the representation and was thereby damaged." *Dawson v. Withycombe,* 216 Ariz. 84, 96, ¶ 26, 163 P.3d 1034, 1046 (App.2007).

¶ 13 The complaint alleges the Curriers fraudulently misrepresented their true reason for wanting to move by telling the Lerners they wanted to live closer to friends, when they actually wanted to move away from the sex offender who lived next door. The Curriers argue the Lerners' fraud claim against them is barred as a matter of law by language in the sales documents that prevents the Lerners from proving the alleged false statement was material and that they relied on it.

¶ 14 The Curriers cite the notices in the Disclosure Statement, quoted above, that "by law," a seller is not obligated to disclose that a sex offender lives nearby and the warning in the contract that if the presence of sex offenders was material to the Lerners, "it must be investigated by the Buyer during the Inspection Period." The Curriers also cite the warranty the Lerners gave in the sales contract that they were not relying on any "verbal representations concerning the Premises." The Curriers argue that as a matter of law, these provisions prevent the

Lerners from proving that any statement the Curriers made about why they were moving was material to the transaction. For the same reason, they contend the Lerners may not prove they relied on any such statement.

¶ 15 Questions about materiality and reasonable reliance, however, usually are for the jury, not for the court to decide on a motion to dismiss. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa County,* 208 Ariz. 532, 537, ¶ 10, 96 P.3d 530, 535 (App.2004) (reasonable reliance); *Hill v. Jones,* 151 Ariz. 81, 86, 725 P.2d 1115, 1120 (App.1986) (materiality).

¶ 16 The general rule that the jury must resolve questions of materiality and reliance in a fraud claim applies even when, as here, the contract purports to impose on the buyer the duty to investigate and contains a "warranty" by which the buyer affirms he is not relying on any extra-contractual representations by the seller. Our supreme court long ago addressed this issue in *Lutfy v. R.D. Roper & Sons Motor Co.,* 57 Ariz. 495, 115 P.2d 161 (1941). The plaintiff in that case bought a 1936 model "Cord automobile" thinking it was a 1937 model. *Id.* at 498, 115 P.2d at 163. The contract provided that "there is no representation or warranty" of the model year of the car and, like the sales contract here, affirmed that the buyer "has placed no reliance and acted upon no representations or warranties" by the seller, and further, had "relied solely" on his own investigation in deciding to enter the contract. *Id.* at 498–99, 115 P.2d at 163. As in this case, the seller argued the contract barred the buyer's fraud claim, but the court held to the contrary: "[A]s we see it, any provision in a contract making it possible for a party thereto to free himself from the consequences of his own fraud in procuring its execution is invalid and necessarily constitutes no defense." *Id.* at 506, 115 P.2d at 166. *See Hill,* 151 Ariz. at 83, 725 P.2d at 1117 (contract provision that seller would not "be bound by any understanding, agreement, promise, representation or stipulation

---

4. On appeal, the Lerners do not contest the superior court's dismissal of their claims for breach

of the duty of good faith and fair dealing.

expressed or implied, not specified herein" did not bar fraud claim based on alleged parol statement).

¶ 17 The Curriers cite *Jones v. Chiado Corp.*, 137 Ariz. 298, 670 P.2d 403 (App.1983), for the proposition that as a matter of law, one may not rely on an oral representation that is directly contrary to a term of a written contract. But *Chiado* held a party may not be liable for misrepresenting a term of a contract. *Id.* at 300, 670 P.2d at 405. No such claim is at issue here. Nor do we accept the Curriers' argument that *Elm Retirement* bars the Lerners' fraud claim. That case addressed a claim for breach of warranty, not a fraud claim. 226 Ariz. at 291, ¶ 20, 246 P.3d at 942.

¶ 18 The Curriers also argue that as a matter of law, their alleged statement that they were moving to be near friends cannot be construed as a representation that there were no sex offenders living near the home. But the complaint does not allege the Curriers fraudulently assured the Lerners there were no sex offenders nearby. Instead, the Lerners' claim is that when they asked the Curriers why they were leaving, the Curriers lied by making up a false reason (wanting to be closer to friends) rather than stating their real reason (wanting to move away from the sex offender next door). The complaint alleges that statement was false and was material to the Lerners, who were concerned for their family's safety, and that the Lerners relied on it.

¶ 19 The Curriers argue no prospective homebuyer would reasonably rely on a seller's representation about his or her reason for moving; they also argue that the possible presence of a sex offender could not have been too important for the Lerners, given that there is no contention that they ever asked the Curriers outright about the issue. These are fair points, and we do not mean to say that as a matter of law, the alleged misrepresentation was material to the transaction or that the Lerners reasonably relied on it.[5] We only hold that the complaint states facts that are "reasonably susceptible of proof" of fraud and that the jury ultimately must decide whether the Lerners have proved materiality and reasonable reliance. *See Coleman,* 230 Ariz. at 356, ¶ 8, 284 P.3d at 867.[6]

¶ 20 The Curriers next argue that if the Lerners' fraud allegations state a claim, the claim is barred by A.R.S. § 32–2156(A)(3), which states in relevant part that "[n]o ... civil ... action may be brought against a transferor or lessor of real property ... for failing to disclose that the property being transferred or leased is or has been: ... [l]ocated in the vicinity of a sex offender."

¶ 21 The Curriers concede the statute would not bar a claim for outright fraud, but argue the Lerners' fraud claim alleges not a false statement but a failure to disclose, and therefore cannot survive the statute. Contrary to the Curriers' argument, however, the fraud claim alleged in the Lerners' com-

---

5. The Curriers assert the legislature has deemed the presence of a sex offender "presumptively non-material," citing a House summary of a 1999 proposed amendment to A.R.S. § 32–2156 that observed, *"Non-material facts* include whether the property was the site of a natural death, a suicide, a homicide or any other felony crime; the property was owned or occupied by a person exposed to the human immunodeficiency virus [HIV] or diagnosed as having the acquired immune deficiency syndrome [AIDS]; or, the property is located in the vicinity of a sex offender." H.R. Bill Summary (April 12, 1999), H.B. 2564, 44th Leg., 1st Reg. Sess. (Ariz.1999), available at http://www.azleg.gov/legtext/441eg/1r/summary/h.hb2564.aph.htm. But the summary at issue was written in 1999, two years after the sex-offender provision was added to the statute. 1997 Ariz. Sess. Laws, ch. 136, § 40 (1st Reg. Sess.). Moreover, we do not know the author of

the summary and cannot discern the factual basis of his or her characterization of the prior amendment. *See Sempre Ltd. P'ship v. Maricopa County,* 225 Ariz. 106, 111, ¶¶ 20–21, 235 P.3d 259, 264 (App.2010). Finally, given that, as noted in ¶ 32 *infra,* Arizona law requires the public posting of certain sex offenders' home addresses, we question the summary's statement that the presence of a sex offender in a neighborhood is necessarily non-material. Although the Curriers argue the Lerners would have asked a specific question about sex offenders if the issue was material to them, materiality is a question left to the fact-finder.

6. We do not understand the cases cited by our colleague who dissents on this issue to hold that, as a matter of law, the reason a party enters a contract cannot be material.

plaint is not grounded in an alleged failure to volunteer information about the sex offender. The complaint alleges the Lerners asked a question to which the Curriers gave a false answer: Asked why they were moving, the Curriers allegedly lied by saying they were moving to be closer to friends when their real reason was the sex offender next door.

¶ 22 When one is asked a question that fairly calls for disclosure of a material fact, he or she commits fraud by concealing the truth or otherwise answering in a manner deliberately calculated to mislead. "Unlike simple nondisclosure, a party may be liable for acts taken to conceal, mislead or otherwise deceive, even in the absence of a fiduciary, statutory, or other legal duty to disclose." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 483, ¶ 19, 38 P.3d 12, 21 (2002); *see* Restatement (Second) of Torts § 529 (1977) ("Restatement Second") ("A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation.").

¶ 23 Contrary to the Curriers' suggestion in supplemental briefing the court requested on this issue, the Lerners' question did not ask the sellers to identify anything that might be considered negative about the neighborhood. It was a specific question, which the complaint alleges the Curriers answered falsely, and on which the complaint alleges the Lerners relied.

¶ 24 For these reasons, we hold the Lerners' fraud claim against the Curriers is not barred by § 32–2156(A)(3) and reverse the superior court's dismissal of that claim.

## 2. The negligent misrepresentation claim.

¶ 25 We construe the Lerners' negligent misrepresentation claim to assert that the Curriers negligently failed to disclose the presence of the sex offender. Restatement Second § 551 establishes when a party to a

business transaction may be liable for damages for failing to disclose information:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

\*     \*     \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*See* Restatement Second § 551 cmt. b (contrasting "conditions under which liability is imposed for nondisclosure," giving rise to an action for damages, with those that "may confer a right to rescind the transaction"); *see also Hill,* 151 Ariz. at 84, 725 P.2d at 1118 (citing Restatement Second § 551 and Restatement (Second) of Contracts § 161 (1981) in holding buyer may rescind a contract based on seller's failure to disclose a material fact).[7]

¶ 26 The Curriers argue they cannot be liable for failing to disclose the presence of the sex offender because the contract and disclosure materials made clear to the Lerners that if the possible presence of a sex offender was material to them, they had the

---

7. In the absence of contrary Arizona authority, we follow the Restatement of the Law. *Bank of America v. J. & S. Auto Repairs,* 143 Ariz. 416, 418, 694 P.2d 246, 248 (1985).

obligation to investigate and could not rely on the Lerners to volunteer that information. *See* Restatement Second § 551 cmt. j (a party need not disclose even a "fact[ ] basic to the transaction" if "the parties expressly or impliedly place the risk as to the existence of a fact on [the other] party.").

¶ 27 We draw from the Restatement, however, the principle that a seller may be required to disclose information when the buyer reasonably cannot discover the information for himself. If the undisclosed or partially disclosed fact concerns a matter that would-be buyers reasonably can discover on their own, the Restatement rule plainly would deny relief. But comments to the Restatement allow for a different outcome when the information at issue is not reasonably available to the buyer.

¶ 28 By way of explanation, a comment to the Restatement describes the usual duty of a party under the "traditional ethics of bargaining":

> When the facts are patent, or when the plaintiff has equal opportunity for obtaining information that he may be expected to utilize if he cares to do so, or when the defendant has no reason to think that the plaintiff is acting under a misapprehension, there is no obligation to give aid to a bargaining antagonist by disclosing what the defendant has himself discovered.

Restatement Second § 551 cmt. k.[8] Another comment, however, cautions that "[t]he continuing development of modern business ethics has ... limited to some extent this privilege to take advantage of ignorance." *Id.* cmt. 1. Thus, a party to a transaction may be obligated to make disclosure when "good faith and fair dealing" require it. *Id.*

¶ 29 Under the Restatement, disclosure may be required when "the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware." *Id.* The Restatement further observes that "the concept of facts basic to the transaction may be expanding and the duty to use reasonable care to disclose the facts may be increasing somewhat." *Id.*

¶ 30 As an example of these principles, the Restatement relates that a seller may be obligated to disclose to a prospective buyer that water periodically pools beneath the house if the buyer could not discover that fact upon an ordinary inspection and would not buy if he knew it. Restatement Second § 551 illus. 9. The same is true when a buyer could not reasonably discover that the seller of a gravel operation has received a cease-and-desist letter from the government, or when criminal prosecutions of the owner of an amusement center have so impaired the "reputation and patronage of the center" that its income has been greatly reduced, and the owner knows the prospective buyer "could not be expected to discover" the prosecutions "by ordinary investigations." *Id.* illus. 10, 11.

¶ 31 In *S Development Co. v. Pima Capital Management Co.,* 201 Ariz. 10, 31 P.3d 123 (App.2001), we held that an "as-is" clause may bar a claim relating to a latent defect only to the extent that the buyer reasonably may discover the defect. *Id.* at 16, ¶ 12, 31 P.3d at 129. We also held that whether an undisclosed fact is so "basic" to a transaction that it may trigger a duty to disclose is normally a question of fact, as are questions about whether the buyer had a reasonable opportunity to discover the defect. *Id.* at 18, ¶ 17, 31 P.3d at 131.

¶ 32 The complaint in this case alleges that where the sex offender lived is "not a matter of public record," and the Curriers do not dispute that information about the whereabouts of a level-one sex offender is not posted on a law enforcement website. *Cf.* A.R.S. § 13–3827(A), (B) (2014) (name, address, age and photograph of level-two and

---

8. The comment continues: "To a considerable extent, sanctioned by the customs and mores of the community, superior information and better business acumen are legitimate advantages, which lead to no liability. The defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself; and if the plaintiff is indolent, inexperienced or ignorant, or his judgment is bad, or he does not have access to adequate information, the defendant is under no obligation to make good his deficiencies."

level-three sex offenders are posted on website); A.R.S. § 13–3826(E)(1)(a) (for level-two and level-three offenders, law enforcement must notify "surrounding neighborhood, area schools, appropriate community groups and prospective employers"). In the case of a level-one offender, local law enforcement agencies need only maintain information about the offender and "may give notification to the people with whom the offender resides." A.R.S. § 13–3826(E)(1)(b).

¶ 33 Nevertheless, the Curriers argue it was common knowledge in the neighborhood that the sex offender lived there, and suggest that it would have been a simple matter for the Lerners to discover the presence of the sex offender if they had asked. Any efforts the Lerners made to investigate the possible presence of a sex offender in the neighborhood and the difficulty of discovering his existence, of course, are for the finder-of-fact to consider, not for the court to decide as a matter of law on a Rule 12(b)(6) motion to dismiss. For these reasons, we conclude that unless the Lerner's failure-to-disclose claim is precluded by A.R.S. § 32–2156(A)(3), the superior court erred by dismissing it pursuant to Rule 12(b)(6).

### 3. The statutory bar and abrogation.

¶ 34 As stated above, A.R.S. § 32–2156(A)(3) provides that "[n]o ... civil ... action may be brought against a transferor or lessor of real property ... for failing to disclose that the property being transferred or leased is or has been: ... [l]ocated in the vicinity of a sex offender." There is no dispute that if this provision is enforceable in these circumstances, it bars the Lerners' claim against the Curriers for failing to disclose the presence of the sex offender. The Lerners, however, argue that as applied in these circumstances, the statute is unconstitutional under the anti-abrogation clause of the Arizona Constitution.

¶ 35 Article 18, Section 6 of the Arizona Constitution provides, "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." The anti-abrogation clause "was

intended to take the right to seek justice out of executive and legislative control, preserving the ability to invoke judicial remedies for those wrongs traditionally recognized at common law." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 17, 730 P.2d 186, 194 (1986).

¶ 36 In assessing whether a statute runs afoul of the antiabrogation clause, we first determine whether the right of action at issue was among "those wrongs traditionally recognized at common law." *Id.* In this analysis, we are mindful that the constitutional protection "is not limited to those elements and concepts of particular actions which were defined in our pre-statehood case law." *Id.* at 17–18, 730 P.2d at 194–95. Instead, "[t]he evolution of common law causes of action—whether in duty, standard of care, or damages—falls within the broad coverage of art. 18, § 6." *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 344, 861 P.2d 625, 629 (1993). In general, to be protected by the anti-abrogation clause, a cause of action "must have existed at common law or have found its basis in the common law at the time the constitution was adopted." *Dickey v. City of Flagstaff*, 205 Ariz. 1, 3, ¶ 9, 66 P.3d 44, 46 (2003).

¶ 37 Although the Lerners argue that "Arizona law has traditionally imposed duties on property sellers and real-estate agents to disclose all material facts to a buyer," they cite no authority for the proposition that a seller had such a duty at the time of statehood. Instead, the Lerners argue that their right to sue the Curriers should be protected from abrogation as part of the "evolution of common-law actions" approved in *Hazine*, 176 Ariz. at 344, 861 P.2d at 629 (quotations omitted).

¶ 38 In *Hazine*, our supreme court held a cause of action for strict product liability was protected by the anti-abrogation clause. *Id.* at 345, 861 P.2d at 630. The court concluded it was "totally irrelevant" that Arizona did not recognize the tort until the 1960s because, "[w]hile not universally applied to product liability cases until recent times, theories of strict and even absolute liability were recognized in tort law well before 1912." *Id.* at 344, 861 P.2d at 629 (quotations omitted).

The cases do not provide a precise roadmap for determining whether a cause of action is one that has "evolved" from common law, and therefore subject to constitutional protection, or rather is one so far removed from common law roots that the legislature is free to preclude it. *Compare Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 990 P.2d 1061 (App.1999) (claim for negligent peer review by hospital not protected because not recognized at common law).

¶ 39 We take additional guidance, however, from our supreme court's decision in *Cronin v. Sheldon*, 195 Ariz. 531, 991 P.2d 231 (1999), which held that a tort claim for wrongful termination was not protected by the anti-abrogation clause. At issue in *Cronin* was whether the Arizona Employment Protection Act, A.R.S. § 23–1501(3)(b)(i) (2014), constitutionally could curtail a wrongful termination claim brought under the Arizona Civil Rights Act, A.R.S. § 41–1401 to –1492 (2014). *Id.* at 533, ¶ 1, 991 P.2d at 233. The court held the claim at issue was not protected because it did not "evolve from common law antecedents." *Id.* at 539, ¶ 37, 991 P.2d at 239. Indeed, "[t]he common law gave no protection to employees or others against discrimination based on race, age, or gender and recognized no such right." *Id.*

¶ 40 As applied here, a buyer in territorial Arizona who was not in a special relationship with a seller could not sue the seller for failing to disclose a latent defect. *Cf. Richardson v. Heney*, 18 Ariz. 186, 194–95, 157 P. 980, 983–84 (1916) (joint-venture partner in a "special and confidential" relationship owed disclosure duty to partner); *see generally Hill*, 151 Ariz. at 84, 725 P.2d at 1118 ("This is not the place to trace the history of the doctrine of *caveat emptor*.").[9] As we stated above in discussing Restatement Second § 551, a seller's duty to disclose in a situation such as present here is a product of the "continuing development of modern business

ethics," not the historic common law. Restatement Second § 551 cmt. 1 ("There are indications, also, that with changing ethical attitudes in many fields of modern business, the concept of facts basic to the transaction may be expanding and the duty to use reasonable care to disclose the facts may be increasing somewhat.").

¶ 41 We therefore hold that, like the wrongful termination claim in *Cronin*, the Lerners' claim for negligent failure to disclose is not protected by the anti-abrogation clause. We cannot conclude the claim "evolve[d] from common law antecedents" when the basis of the claim—the duty of a seller not in a special relationship with a buyer to inform the buyer of facts unknown to the buyer—is totally foreign to any duty recognized in the common law. Accordingly, the superior court properly dismissed this claim against the Curriers pursuant to A.R.S. § 32–2156(A).

## C. The Claim Against DMB for Breach of Fiduciary Duty.

¶ 42 The Lerners alleged DMB breached its fiduciary duty to them by failing to disclose the presence of the sex offender, thereby protecting the Curriers' interests over their own.

¶ 43 A real estate broker "occupie[s] a confidential and fiduciary relationship with the [client] and thereby [is] held to the highest ethical standards of fairness and honesty." *Marmis v. Solot Co.*, 117 Ariz. 499, 501–02, 573 P.2d 899, 901–02 (App.1977); *see also, e.g., Jennings v. Lee*, 105 Ariz. 167, 173, 461 P.2d 161, 167 (1969); *Walston & Co. v. Miller*, 100 Ariz. 48, 51, 410 P.2d 658, 660–61 (1966); *Leigh v. Loyd*, 74 Ariz. 84, 87, 244 P.2d 356, 358 (1952). A broker owes a fiduciary duty to disclose material facts to its client. *Leigh*, 74 Ariz. at 87, 244 P.2d at 358.

---

9. In *Hill*, we cited the Wisconsin Supreme Court's decision in *Ollerman v. O'Rourke Co., Inc.*, 94 Wis.2d 17, 288 N.W.2d 95 (1980), in noting that *caveat emptor* prevailed at common law. 151 Ariz. at 84, 725 P.2d at 1118. As the *Ollerman* court explained, "The traditional legal rule that there is no duty to disclose in an arm's-length transaction is part of the common law doctrine of caveat emptor which is traced to the

attitude of rugged individualism reflected in the business economy and the law of the 19th century.... Under the doctrine of caveat emptor no person was required to tell all that he or she knew in a business transaction, for in a free market the diligent should not be deprived of the fruits of superior skill and knowledge lawfully acquired." 288 N.W.2d at 101.

If it can do so without violating a superior duty to another, a broker also must disclose facts it "knows or has reason to know that the principal would wish to have ... or [if] the facts are material to the agent's duties to the principal." Restatement (Third) of Agency § 8.11 (2006); see also, e.g., Leigh, 74 Ariz. at 87, 244 P.2d at 358.

¶ 44 The broker's fiduciary duty to disclose material information is not necessarily diminished in a dual-agency situation such as occurred here. Restatement (Third) of Agency § 8.06(2); see Marmis, 117 Ariz. at 502–03, 573 P.2d at 902–03. When obtaining clients' consent to represent both parties in a transaction, a broker must deal fairly and in good faith with each of them, and "disclose all material facts that the [broker] knows, has reason to know, or should know would reasonably affect the principal's judgment unless the principal has manifested that such facts are already known by the principal or that the principal does not wish to know them." Restatement (Third) of Agency § 8.06(1)(a)(i), -(ii), -(iii). With the clients' informed consent and in the absence of fraud, however, the duties a broker owes the clients may be limited by contract. See Marmis, 117 Ariz. at 502–03, 573 P.2d at 902–03; Restatement (Third) of Agency § 8.01 cmt. c ("agent's fiduciary duties to the principal vary depending on the parties' agreement and the scope of the parties' relationship"); Restatement (Second) of Agency § 376 (1958); Restatement (First) of Agency § 376 (1933).

¶ 45 Consistent with general agency principles, the dual representation agreement the Lerners signed with DMB explicitly provides that DMB's conflicting duties to the Lerners and the Curriers "do[ ] not relieve [DMB] of any legal obligation to disclose all known facts which materially and adversely affect the consideration to be paid." But the same agreement also provides that the "parties understand and consent ... [that] Pursuant to A.R.S. § 32–2156, [DMB] [is] not obligated to disclose that the Subject Property is or has been ... located in the vicinity of a sex offender."

¶ 46 Assuming, therefore, that DMB otherwise would have had a duty to the Lerners to disclose that a sex offender lived next door to the home they were negotiating to buy, the Lerners expressly agreed that DMB had no obligation to make that disclosure. The Lerners do not argue that the express limitation of duties to which they agreed was hidden in the document or that they could not understand it. Nor do they allege DMB made any misrepresentation to them concerning sex offenders or the extent of the broker's obligations under the dual representation agreement.

¶ 47 Instead, the Lerners argue that the language quoted above from the dual representation agreement did not constitute their agreement to relieve DMB of the obligation to disclose the presence of a sex offender. They contend that the language instead was a mere (incorrect, in their view) statement of Arizona law on the subject. We do not agree. With the client's informed consent and in the absence of fraud, the duties a broker owes its client may be limited by contract. The dual representation that the Lerners signed in this case is just such an agreement. Accordingly, the superior court did not err in dismissing the Lerners' claim against DMB for breach of fiduciary duty.

## CONCLUSION

¶ 48 For the reasons set forth above, we affirm the superior court's judgment, except that we reverse and remand its dismissal of the Lerners' common-law fraud claim against the Curriers and its award of attorney's fees in favor of the Curriers. We award DMB its costs and reasonable attorney's fees on appeal pursuant to A.R.S. § 12–341.01 (2014), contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.

THOMPSON, Judge, concurring in part, dissenting in part.

¶ 49 I agree with the majority's resolution of the issues in this case, with the exception of those issues arising from the fraud claim against the Curriers. The majority posits a viable claim concerning the "real" reason the Curriers sold to the Lerners. Generally, the reason a party enters into a contract is not material and a misrepresentation as to a

contracting party's motivation will not support the justifiable reliance element of a fraud claim. *Lucas v. Long*, 125 Md. 420, 94 A. 12 (1915); *Byrd v. Rautman*, 85 Md. 414, 36 A. 1099 (1897). Obviously, the pertinence of the purported fact of the Curriers' nondisclosure relates to the presence of a sex offender next to the property. This nondisclosure is not actionable pursuant to A.R.S. § 32–2156(A)(3). Half-truths can be the stuff of fraud claims. *See* Prosser, Torts, 5th Ed. § 106 ("half of the truth may obviously amount to a lie, if it is understood to be the whole.") But this claim relies on the assertion that the Curriers' alleged affirmative statement (wanting to move closer to friends) omitted the truth as to the neighbor. Sanctioning such a claim based on such an omission is contrary to the statute.

¶ 50 Plaintiffs have presented no authority for the proposition that there existed at common law an action for non-disclosure of stigmatizing facts as to off-premises conditions. See Roberts, Off–Site Conditions and Disclosure Duties: Drawing the Line at the Property Line, 2006 B.Y.U. L.Rev. 957 (liability for latent defects should not be extended to off-site acts). The statute does not violate the anti-abrogation clause.

¶ 51 I would affirm the superior court in full.